The next case for argument is 23-1556, Team Systems v. Secretary of Homeland Security. Mr. Boland, we'll now hear from you. Thank you. Good morning. Your Honors, may it please the Court, James Boland for the Appellant, Team Systems. The Board's interpretation of the restocking CLIN 005 in the contract was legal error. We believe that TSI's interpretation is the only reasonable one, or at least it is a reasonable interpretation. The CLIN, the only quantity that's mentioned in this CLIN description is the quantity of product that is reduced or canceled, not restocked. The Government's interpretation and the Board's interpretation below rests on the assumption that the applicable quantity that you multiply the unit price on, on CLIN 05, is the quantity actually restocked, physically restocked, and with that is an implicit assumption that there was some incurred cost, and you'll sort of see that... I don't think that latter statement is necessarily correct. I think this provides a, elsewhere it provides a per unit basis, so you don't have to show your actual cost for the restocking, but this still is a restocking CLIN. It's not a cancellation CLIN. Don't you have to show... Let me ask you hypothetically. The Government orders 100 million bottles of water. You order 100 million bottles of water from your manufacturer, and they get delivered to you. The Government comes back and says, oh, we only need 20 million. You take the remaining 80, and you don't send them back to the manufacturer, which would be restocking, but you sell those on to another party, because you're in the business of selling water. Is there any restocking there, if you sell them on to another party? In that instance, no. Why should you get a cancellation fee, or a restocking fee, when there's no restocking? Because the restocking fee is a cancellation fee. If it was a cancellation fee, wouldn't it say it was a cancellation fee? Your Honor, respectfully, no, and that's contrary to the three expert reports that we sent. Yeah, you were too late on those. I mean, that's not use of discretion analysis, and my colleagues might disagree, but just assume for purposes of my questions that I'm not looking at those experts. I'm looking at the plain language of this, and the title of it is restocking fee, and the second sentence says this fee covers the cost of restocking. How is this not a restocking fee, and in your view, a cancellation fee? It's because restocking fee is a common term in the industry to mean cancellation of prescription. On the plain language, we don't win. Yeah, it covers the cost of restocking. That explains the purpose, but the purpose does not mean that you actually have to incur cost. Well, if it says the fee covers, if there's nothing that it's covering, then that answers the question, right? You can cover $100 million, you can cover zero. Doesn't it at least require restocking? Say, for instance, you had a good deal with your manufacturer, and they didn't charge you anything for restocking. They just said, we'll take back whatever you don't use for free. They're still restocking there, and in that case, you would get the restocking fee. I think it's really important for the court to consider the risk. What is being paid with this fixed price? The risk to TSI here is that their restocking fee could have been $0.80 a liter, and they would have been in serious financial trouble had that what happened. This was an emergency order. These contracts were bid, and... I don't see how that matters to the interpretation of this. If the $0.20 was too low, then you negotiated a bad deal. That doesn't have any bearing on what the plain language of this means when it's talking about restocking. I mean, I find your position in this case almost incredulous, that when something is titled a restocking fee and says the point of this fee is to cover the cost of restocking, and you want to say it doesn't deal with restocking at all, it's a cancellation fee. We're not saying it doesn't deal with restocking. We acknowledge... Sure you are. Your whole point is there doesn't have to be any restocking whatsoever, that it's a cancellation fee. What we're saying is that this CLIN is in lieu of the Termination of Friendly Convenience Clause that would normally cover exactly this sort of thing. This was a separate arrangement where the parties agreed in advance to fix an amount, so this covers. I mean, again, if this clause was not here... Under the Termination for Convenience Clause, you would have to establish your injury and your cost. Here, you don't have to establish the cost. It's set, but it covers restocking, so it's specific to that event. Right, but the actual description, though, and again, the definition says what it triggers, and it's the initial order quantity is decreased or canceled, so that's what's telling you when the CLIN 5 fee kicks in. Okay, but it doesn't establish that you get the fee or the amount of the fee or what the fee might apply, and then it says that the fee covers the cost of restocking. That's the operative language, right? Right, it does, and so it's essentially a blanket pre-negotiated amount, and so in any respect... For restocking costs, so you don't have to show individual costs for restocking. This is not a cancellation clause. I mean, it just doesn't say that. If you wanted the regular T4C Clause, I suppose you could have tried to negotiate it. I mean, you probably wouldn't have gotten it, but in that case, you would have been... If there was no restocking there, then you also would not have gotten any money, right? Go back to my hypothetical. If we have the traditional T4C Clause, government order is 100 million bottles of water, then only once, 20. You sell the 80 you have left at either the same profit or a bigger profit. You don't get anything under the T4C Clause, do you? Because you don't have any increased costs from the cancellation. There could be, and there probably would be indirect costs, but... Just keep it straight to my hypothetical. I don't disagree with that. So why are you trying to get more because of this? Because it's a restocking clause. Let's just assume, I have no idea, because there's no facts in here. You didn't try to show there was restocking. I'm going to assume for purposes, again, of a hypothetical, that you incurred no additional out-of-pocket costs because of the government's cancellation. Why should you get money for restocking that didn't occur? Because that was the negotiated price. It's the nature of fixed price contracts. When parties propose and say, hey, I'm going to be charged a restocking fee, that's what TSI said under the emergency conditions. And so they were invoking and said, we're proposing 20 cents for CLEM 5. If it turns out they don't actually get charged, fixed price contracting doesn't allow you to go back and revisit that. But you just said the fee is for restocking. How are you to determine the quantity, the amount of money? How are you supposed to calculate the amount of money, if not in terms of the quantity that was restocked? We are not disagreeing that the CLEM is to cover the cost, whatever those may be, of restocking. We agree. It's sort of a plug number that this is the maximum liability the government would receive. But the quantity is determined by the amount canceled because that's the only quantity described in CLEM 5. CLEM 5 does not say the things that the government wants it to say. Quantity isn't, there's no quantity identified in CLEM 5. It refers to the quantity either decreases or the order is canceled. That's the predicate. But once you get to that, what establishes what the fee is, is what it covers. And it says it covers the cost of restocking. Right. And the cost of restocking, it doesn't have to be more than zero. Because you're negotiating this in advance. But there has to be restocking. Even if the cost was zero, there's no restocking. You didn't attempt to show that there was restocking. I get you. You don't have to show under this clause the actual cost. And even if they were zero, the government negotiated a per unit cost because they didn't want to go through the business of trying to figure out actual cost. So maybe you could do it for zero money. But the predicate for this to kick in is restocking. Right. And I understand the court said... Well, let me just ask you this. If that's the right legal reading of this, if that's what we find, you agree that there was no restocking here on the record we have? We agree.  Right. But if I may, I'd like to turn back to, you know, Judge Hughes mentioned before about the timeliness. And I'd like to make a run at that. So in our opposition to FEMA's summary judgment motion, and this is on appendix 0465, we said that if the government or the We had agreed with FEMA early on to pause expert and fact discovery to exchange summary judgment motions on this. The board did not enter judgment. Let me ask you this. Even if that was all wrong, if our plain reading presided from stocking, none of that stuff matters, right? We don't get to your testimony if our plain reading is restocking is required. I actually disagree completely. I think metric constructors requires this court to send it back to the board to consider expert testimony. Well, the facts in metric constructors are a little different. And I don't know. Don't overread what's set forth in metric. And can't we find it was harmless error? I mean, we do that all the time in cases. So it was harmless error because nothing they could have contributed would change our reading of the plain meaning of the contract. But I would say respectfully that the contract does not say the words. I know it talks about restocking, but it does not say, unlike the other additional cleanse, it does not say that the quantity is the quantity actually restocked. I mean, that's inferred, but it doesn't say that. But that's not what we're talking about now. We're talking about whether it was harmful error to not consider the expert's testimony about this language. And if we determine as a matter of plain language that this requires restocking to kick in, then whatever the expert said doesn't matter. Because you don't get to expert testimony if the language of the contract is plain, right? I disagree. That's not what metric constructors says. Okay, that is a fundamental issue of contract law. You don't go to extrinsic evidence. You are really pushing it here. That case is not on point. The plain language of the contract controls. You don't go to extrinsic evidence if you find that it's plain. Your Honor, my reading of metric is that you can look at trade practice as, quote, part of the initial assessment of contract meaning because it may show that language that appears on its face to be perfectly clear and unambiguous, in fact, has a meaning different from its ordinary meaning. That's what we're saying. We're saying that to the extent the Court says restocking fee only means this situation, then at a minimum the Board should look at and consider whether that term is a term of art in the industry. And when people say restocking fee, they consider it a cancellation fee. And I think that what we're saying is that the Board has to look at that to determine is this clause ambiguous or not. If you have no other questions, let me reserve my time. Yes, thank you. Thank you. Okay, please record. I wanted to first briefly turn to the reference to 465 in which Team Systems claims reserves No, we don't forget about it. Could you just respond to his last point about the metric constructors? No, no, no. I think metrics constructors is indeed distinguishable. And metrics constructors involve the question of relamping. The Court is arguing about relamping, a term that did not appear at all in the contract. Okay. Here we have the language of the contract. You said in your opinion, in your brief, Joet, which clearly says that these are irrelevant for the contract language. Yes. I mean, when you have plain language from the Board, when there's a contract, and you can interpret it as unambiguous, you focus upon the language of the contract. First and foremost. Sorry to take you up. Well, I think that actually flows into my point. Because Team Systems even recognizes this. They say they reserve their right to sort of introduce declarations later on. But what they actually reserve is, and this is on Appendix 465, their footnote states, you know, that in the event the Board determines that CLIN005 was patently ambiguous and declines to construe the meaning against the government, TSI requests the opportunity to provide testimony. So they recognized at the time that indeed if it was unambiguous, they wouldn't be introducing declarations. So that actually cuts against their argument that they sort of had reserved their rights and that this was something that would come in later and it wasn't untimely. Overall, the government's position, I think, is set forth pretty well in our briefs. We hold that a restocking fee requires restocking. Consistent with the plain language of the contract. If the Court has any questions. All right, for those reasons, the reasons set forth in the brief, we respectfully request that this Court confirm the decision of the Board. Thank you. Thank you, Your Honor. I'll raise the issue of the expert reports again. I think when the Board did not enter a judgment before and the parties agreed to a joint schedule, there was a joint schedule for expert reports. There was FEMA agreed to a deadline for expert reports. We exchanged them. They did not rebut them. They did not depose them. And for that reason, we submit that these reports were submitted timely and the Board should have considered them. Thank you. Thank you. We thank both sides. The case is submitted. That concludes our proceeding for this morning.